

**NUMBER 13-11-00705-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

SOPHIA CAMPOS
A/K/A SOPHIA GAYTAN,                                               Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

---

### On appeal from the 105th District Court
### of Kleberg County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion by Justice Longoria

A jury found Sophia Campos a/k/a Sophia Gaytan guilty of murder and four counts of aggravated assault with a deadly weapon arising from a bar brawl, the facts and circumstances of which were hotly contested at trial. *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2011) ("murder"); *id.* § 22.02(a)(2) (West 2011) ("aggravated assault").

The jury assessed a sentence of life in prison for the murder and a twenty year prison sentence for each of the four counts of aggravated assault. *Id.* § 12.32 (West 2011) ("first degree felony punishment"); *id.* § 12.33 (West 2011) ("second degree felony punishment"). Campos now appeals by two issues in which she contends that the trial court deprived her of a fair and impartial trial by submitting to the jury a charge that erroneously (1) omitted from the application paragraphs an instruction on the law of self defense and (2) misallocated the burden of proof with respect to the law of defense of a third person. For the reasons set forth below, we affirm the trial court's judgment.

## I. STANDARD OF REVIEW

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Appellate review of purported error in a jury charge involves a two-step process." *Id.* "First, we determine whether the jury instruction is erroneous." *Id.* "Second, if error occurred, then an appellate court must analyze that error for harm." *Id.* "The issue of error preservation is not relevant until harm is assessed because the degree of harm required for reversal depends on whether the error was preserved." *Id.*

In this case, Campos did not object to the jury charge at trial. The Texas Court of Criminal Appeals has explained the applicable standard of review as follows:

> Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." In examining the record for egregious harm, *vel non*, a reviewing court should consider . . . 1) the entire jury charge, 2) the state of the evidence, including the contested issues and the weight of the probative evidence, 3) the final arguments of the parties, and 4) any other relevant information revealed by the record of the trial as a whole. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.

2

*Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (footnotes omitted) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). To succeed in this appeal, Campos "must have suffered actual harm, not merely theoretical harm." *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012).

## II. APPLICABLE LAW

Pursuant to Article 36.14 of the Texas Code of Criminal Procedure, the trial judge is required to give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "[I]f a jury-charge instruction is not derived from the penal code, it is not 'applicable law' under art[icle] 36.14." *Kirsch*, 357 S.W.3d at 651. "The appellant is, of course, entitled to an instruction on every defensive issue raised by the evidence, 'whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of what the trial court may or may not think about the credibility of the defense.'" *Allen*, 253 S.W.3d at 267.

## III. SELF DEFENSE

In her first issue, Campos contends that the trial court committed fundamental error by omitting from the application paragraphs of the jury charge an instruction on the law of self defense. *See* TEX. PENAL CODE ANN. § 9.31 (West 2011) ("self defense").

### A. Applicable Law

Section 9.31 of the Texas Penal Code provides for self defense in relevant part as follows:

(a) Except as provided in Subsection (b), a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. . . .

(b) The use of force against another is not justified:

(1) in response to verbal provocation alone;

(2) to resist an arrest or search that the actor knows is being made by a peace officer, or by a person acting in a peace officer's presence and at his direction, even though the arrest or search is unlawful, unless the resistance is justified under Subsection (c);

(3) if the actor consented to the exact force used or attempted by the other;

(4) if the actor provoked the other's use or attempted use of unlawful force, unless:

(A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor; or

(5) if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was:

(A) carrying a weapon in violation of Section 46.02; or

(B) possessing or transporting a weapon in violation of Section 46.05. . . .

(d) The use of deadly force is not justified under this subchapter except as provided in Sections 9.32, 9.33, and 9.34.

*Id.* § 9.31(a), (b), (d).

Section 9.32 of the Texas Penal Code provides for the use of deadly force in relevant part as follows:

(a) A person is justified in using deadly force against another:

4

(1) if the actor would be justified in using force against the other under Section 9.31; and

(2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:

    (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or

    (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

*Id.* § 9.32(a) (West 2011).

Section 9.33 of the Texas Penal Code provides for defense of a third person as follows:

A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

*Id.* § 9.33 (West 2011).

**B. Jury Charge**

In the abstract portion of the jury charge, the trial court instructed the jury on the law of self defense and the use of deadly force under Sections 9.31 and 9.32 of the Texas Penal Code, respectively. *See id.* §§ 9.31–.32. Specifically, the charge instructed the jury in relevant part as follows:

A person is justified in using force or deadly force against another if the actor would be justified in using force against the other in the first place, as

5

above set out, and when the actor reasonably believes that such force or deadly force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful deadly force. . . .

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack. It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

You are instructed that it is your duty to consider evidence of all the relevant facts and circumstances surrounding the alleged killing and assaults and the previous relationship existing between the deceased [and the] third party and the previous relationship, if any, existing between the deceased and the accused, and, in considering all the foregoing, you should place yourselves in defendant's position and view the circumstances from her standpoint alone at the time in question.

In the abstract portion of the jury charge, the trial court also instructed the jury on the law regarding defense of a third person under Section 9.33 of the Texas Penal Code. *See id.* § 9.33.

On appeal, Campos contends that the trial court erred in failing to include an instruction on self defense in the application paragraphs of the jury charge. *See id.* §§ 9.31–.32. With respect to Count I, the alleged murder of Matthew Garcia, the jury charge's application paragraphs instructed the jury in relevant part as follows:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Sophia Campos, on or about the 8th day of August, 2010, in the County of Kleberg and State of Texas, as alleged in the indictment, did then and there,

6

1) with the intent to cause serious bodily injury to Matthew Garcia, commit an act clearly dangerous to human life that caused the death of Matthew Garcia, by stabbing Matthew Garcia, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or a sharp object during the commission of said act, or

2) intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to wit: stabbing Matthew Garcia, that caused the death of Matthew Garcia, and the defendant was then and there in the course of intentionally or knowingly committing a felony, to wit: aggravated assault, and said death of Matthew Garcia was caused in the course of and in furtherance of the commission of or attempt to commit said felony, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or a sharp object during the commission of said act,

then you will find the defendant guilty of the offense of Murder as alleged in Count I and so say by your verdict;

Or, if you believe from the evidence beyond a reasonable doubt that someone other than Sophia Campos on or about the 8th day of August, 2010, in the County of Kleberg and State of Texas, . . . did then and there,

1) with the intent to cause serious bodily injury to Matthew Garcia, commit an act clearly dangerous to human life that caused the death of Matthew Garcia, by stabbing Matthew Garcia, and that that person did then and there use or exhibit a deadly weapon, to-wit: a knife or a sharp object during the commission of said act, or

2) intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to wit: stabbing Matthew Garcia, that caused the death of Matthew Garcia, and that that person was then and there in the course of intentionally or knowingly committing a felony, to wit: aggravated assault, and said death of Matthew Garcia was caused in the course of and in furtherance of the commission of or attempt to commit said felony, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or a sharp object during the commission of said act,

and you further find and believe beyond a reasonable doubt that

1) Sophia Campos, acting with intent to promote or assist the other person to commit said offense, solicited, encouraged, directed, aided, or attempted to aid the other person to commit said offense, or

7

2) that said offense was committed by the other person in the attempt to carry out a conspiracy to commit another felony and in furtherance of the unlawful purpose, and that Sophia Campos was a coconspirator to the other felony, and that Sophia Campos should have anticipated that said offense would be committed as a result of the carrying out of the conspiracy, whether or not you believe Sophia Campos intended the commission of said offense

then you will find the defendant guilty of the offense of Murder as alleged in Count I in the same manner as if you found that the offense was committed by the defendant's own conduct, and so say by your verdict.

If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, "Not Guilty," as to Count I.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of August, 2010, in Kleberg County, Texas, the defendant, Sophia Campos, did with the intent to cause serious bodily injury to Matthew Garcia, commit an act clearly dangerous to human life that caused the death of Matthew Garcia, by stabbing Matthew Garcia, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or a sharp object during the commission of said act, or intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to wit: stabbing Matthew Garcia, that caused the death of Matthew Garcia, and the defendant was then and there in the course of intentionally or knowingly committing a felony, to wit: aggravated assault, and said death of Matthew Garcia was caused in the course of and in furtherance of the commission of or attempt to commit said felony, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or a sharp object during the commission of said act, but you further find from the evidence, or you have a reasonable doubt thereof, that at that time another person was under attack or attempted attack from the said Matthew Garcia, and that the defendant reasonably believed, as viewed from her standpoint, that such force as she used, if any, was immediately necessary to protect another against such attack or attempted attack, and so believing, she stabbed Matthew Garcia, then you will acquit the defendant and say by your verdict, "not guilty" as to Count I.

However, if you find and believe from the evidence beyond a reasonable doubt that the defendant, Sophia Campos, or the person Sophia Campos intended to defend, if any, immediately before the difficulty, then and there did some act, or used some language, or did both, as the case may be, with the intent on her, the defendant's, part to produce the occasion for killing or injuring Matthew Garcia, and to bring on the difficulty with the said Matthew Garcia, and that such words and conduct on defendant's part, if there were

8

such, were reasonably calculated to, and did, provoke a difficulty, and that on such account the said **Matthew Garcia attacked the defendant** or another, **or reasonably appeared to defendant to so attack her or to be attempting to so attack her** or the other person, and that the defendant then killed or injured the said Matthew Garcia by the use of deadly force, to wit, by stabbing Matthew Garcia, in pursuance of her original design, if you find there was such design, then you will find the defendant guilty of murder. On the other hand, if you find from the evidence that the acts done or language used by the defendant, if any, were not, under the circumstances, reasonably calculated or intended to provoke a difficulty or **an attack by deceased upon the defendant** or another, or if you have a reasonable doubt thereof, then, in such event, defendant's right of defense of a third party would in no wise be abridged, impaired, or lessened, and, if you so find, or if you have a reasonable doubt thereof, you will decide the issue of defense of a third party in accordance with the law on that subject, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

Whatever your verdict as to Count I, you shall proceed to consider Count II.

In the foregoing quotation, we have added emphasis to the specific language in the application paragraphs referring to an "attack" upon Campos by the decedent, Matthew Garcia, because in our view, the emphasized language goes to the issue of self defense, not defense of a third person; however, it is clear from the context that the trial court used the language to instruct the jury on the law of defense of a third person. *See id.* §§ 9.31–.33. The same instruction on the defense of a third person and the same language referring to an "attack" on Campos by the decedent also appears in the application paragraphs for the four counts of alleged aggravated assault.

## C. Arguments on Appeal

Campos argues that the application paragraphs for all five counts were erroneous because they did not permit the jury to reach a verdict of not guilty based on self defense. *See id.* §§ 9.31–.32. The State argues that Campos waived this issue by failing to request an instruction on self defense and by failing to object to the trial court's omission of self

9

defense from the application paragraphs of the jury charge. *See* TEX. R. APP. P. 33.1(a)(1). According to the State, even if Campos had made a timely request and objection, she still would be unable to establish reversible error because there was no evidence at trial raising the issue of self defense. *See Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011) ("If there is some evidence that a defendant's actions were justified under one of the provisions of Chapter 9, the State has the burden of persuasion to disprove the justification beyond a reasonable doubt.").

**D. Error in the Jury Charge**

"The trial judge is 'ultimately responsible for the accuracy of the jury charge and accompanying instructions.'" *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013) (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). Article 36.14 states that "the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. "The trial judge has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge." *Vega*, 394 S.W.3d at 519. "But Article 36.14 imposes no duty on a trial judge to instruct the jury *sua sponte* on unrequested defensive issues because an unrequested defensive issue is not the law 'applicable to the case.'" *Id.* (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998)). "A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint." *Id.*

10

"However, if the trial judge does charge on a defensive issue (regardless of whether he does so *sua sponte* or upon a party's request), but fails to do so correctly, this is charge error subject to review under *Almanza*." *Id.* "If there was an objection, reversal is required if the accused suffered 'some harm' from the error." *Id.* "If no proper objection was made at trial, a reversal is required only if the error caused 'egregious harm.'" *Id.*

The State argues that Campos waived her issue on appeal under *Posey*. *See Posey*, 966 S.W.2d at 62. "But this case is not like *Posey*," as the Texas Court of Criminal Appeals recently explained in *Vega*:

> Posey had complained on appeal that the trial judge reversibly erred by not *sua sponte* instructing the jury on the defense of mistake of fact. Posey had not requested this instruction, nor had he objected to its absence in the jury charge, and the trial judge gave no mistake-of-fact instruction whatsoever. There was no error, because mistake of fact had not become "law applicable to the case."

*Vega*, 394 S.W.3d at 519. As the Texas Court of Criminal Appeals held in *Barrera v. State*, once the jury is charged on a defensive issue, a flaw in that charge is error:

> This case presents a different issue from that in *Posey*, however. Rather than omitting an instruction altogether, the trial court in this case failed to apply an abstract instruction to the facts of the case. That is to say, even without a request, the trial court included the law of self-defense in the charge to the jury. A trial court has no duty to *sua sponte* charge the jury on unrequested defensive issues raised by the evidence. However, having undertaken on its own to charge the jury on this issue, the trial court in this case signaled that self-defense was "the law applicable to the case." Therefore, any flaw in the charge on self-defense amounts to an error in the charge, even under the reasoning of *Posey*.

*Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (citations omitted). Thus, in *Barrera*, the Texas Court of Criminal Appeals held that it was error to include an abstract self-defense instruction in the jury charge and then fail to instruct the jury to acquit if it had a reasonable doubt on self defense. *Id.* at 416–17. Following *Barrera*, we hold

that the trial court erred by including an abstract self-defense instruction in the jury charge and then failing to instruct the jury to acquit if it had a reasonable doubt on self defense. *See id.*

## E. Harm Analysis

Under *Almanza*, an appellant who complains on appeal about un-objected-to error in the jury charge, as in this case, "will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171. We assess whether Campos has suffered egregious harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (quotations omitted). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Id.* at 490.

The first *Almanza* factor is "the entire jury charge." *Almanza*, 686 S.W.2d at 171. In this case, the jury charge consists of twenty-four pages covering five different counts, each of which includes one or more application paragraphs with an instruction on defense of a third person. *See* TEX. PENAL CODE ANN. § 9.33. As set forth above, the abstract portion of the jury charge included an instruction on self defense and the use of deadly force, but the application paragraphs did not instruct the jury to acquit Campos of any of the five counts alleged by the State if they found she was acting in self defense. *Id.* §

12

9.31–.32. The error went to the "heart and soul" of the jury charge because the application paragraphs specify "the factual circumstances under which the jury should convict or acquit." *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012).

The second *Almanza* factor is "the state of the evidence, including the contested issues and weight of probative evidence." *Almanza*, 686 S.W.2d at 171. Campos's guilt or innocence was a hotly contested issue at trial. The State's witnesses testified to facts that, if believed, supported Campos's conviction for murder and four counts of aggravated assault.[1] The State agrees that Campos's evidence raised the issue of whether she was acting in defense of a third person; however, the State maintains, and we agree, that Campos did not testify or offer any evidence that, if believed, would have supported a self defense claim. *See Allen*, 253 S.W.3d at 267–68 ("[I]n an egregious-harm analysis, it is appropriate to consider the plausibility of the evidence raising the defense, as at least one factor among others."). Thus, the omission of an instruction on self defense from the application paragraphs of the jury charge did not "touch[] upon a vital aspect" of Campos's defense. *See id.* at 266. Accordingly, the second *Almanza* factor weighs against Campos.

The third *Almanza* factor is "the argument of counsel." *Almanza*, 686 S.W.2d at 171. As set forth above, Campos was charged with murder and aggravated assault for her alleged role in the killing of Matthew Garcia. Campos was charged with two counts of aggravated assault for the alleged striking and stabbing of Ernesto Garza, and she was charged with one count of aggravated assault for the alleged stabbing of Jason Garcia.

---

[1] We note that Campos has not challenged the sufficiency of the evidence to prove her guilt beyond a reasonable doubt on any of the five counts.

13

In his opening statement at trial, Campos's attorney told the jury that "what you'll find at the very end is that there is no evidence that Sophia Campos stabbed anybody. There is no evidence that Sophia Campos solicited, encouraged, aided, [or] directed anybody to stab another person much less commit a murder." Counsel explained what he expected the evidence to show:

> Some witnesses will come forward and say, Yes, Ms. Campos [was] pointing fingers, doing this, egging them on, walks up to her boyfriend, Danny, and says, Either do something or I'll fucking do it. Walks up to a man 6'2, 250, hits him, [and] everybody jumps in. That's what some witnesses will say. Other witnesses will say that words [were] exchanged between Matt Garcia and her boyfriend, Danny Gonzalez, who's 5'10, 200 pounds at which point some will say that Danny hit Matt first, the fight started.
>
> The other story will be from some witnesses that will testify here that words were exchanged between Matt and Danny. Matt hits Danny, knocked him to the ground and is on top of him pounding him when the fight starts.
>
> A whole, whole bunch of stories[;] all very different. But they all end the same. Matt was stabbed 20 times violently. . . .
>
> And you will see and hear Ms. Campos's statement [on] the night of the murder and judge for yourself if that [is] someone [who] was involved not only in aggravated assault but in assault that led to the murder of Matthew Garcia.
>
> You'll get to see her and hear her that night. When it's all said and done, when everybody has testified, when all the stuff has been admitted and we come forward, you will have one clear conclusion. We don't know what happened that night. . . .
>
> [O]ne thing is clear. Sophia is not guilty of murder, she's not guilty of aggravated assault, she's not guilty as a party, and it would be very crystal clear when this case is over with.

In his opening statement, counsel did not assert or allude to the possibility that Campos was acting in self defense.

14

During closing arguments, Campos's attorney emphasized the discrepancies in the various accounts given by the witnesses for the State in terms of how the altercation began and the various roles played by the different actors, particularly Campos. Counsel acknowledged that there was eyewitness testimony of Campos striking Matthew Garcia with her high heel shoes. However, counsel poked holes in this testimony and contrasted it with other conflicting testimony from other witnesses who did not see Campos strike Matthew Garcia. Campos's attorney asserted his client was not guilty. One theory counsel advanced was that Campos was acting in defense of her boyfriend, Daniel Gonzalez. Counsel never asserted or alluded to the possibility that Campos was acting in self defense. For its part, the State asserted in its closing argument that Campos incited the entire melee—that Campos either attacked Matthew Garcia first or caused Daniel Gonzalez to do so. The State did not assert or allude to the possibility that Campos was acting in self defense. Therefore, the third *Almanza* factor weighs against Campos.

The fourth *Almanza* factor is "any other relevant information revealed by the record of the trial as a whole." *Id.* Here, we reiterate that Campos never confessed to any of the alleged offenses. "An instruction on a confession-and-avoidance defense, . . . [such as self defense or defense of a third person], is appropriate only when the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Cornet v. State*, PD-0205-13, 2013 WL 5925772, at *4 (Tex. Crim. App. Nov. 6, 2013) (quotations omitted); *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).[2] Therefore, it could be argued that Campos was not entitled to an instruction on

---

[2] Nevertheless, "in a handful of cases . . . [the Texas Court of Criminal Appeals has] ignored the confession and avoidance doctrine altogether." *Juarez v. State*, 308 S.W.3d 398, 403 (Tex. Crim. App.

15

self defense or defense of a third person; however, the State concedes that the evidence raised the issue of defense of a third person. In any event, the trial court included defense of a third person in the jury charge and that was the central defensive theory requested and argued by Campos's attorney. The record does not reflect any effort on the part of Campos's attorney to assert, present evidence, or request submission of the issue of self defense, and we are mindful "that which defensive issues to request are strategic decisions generally left to the lawyer and the client." *Posey*, 966 S.W.2d at 63. Based on the foregoing, we conclude that the fourth *Almanza* factor weighs against Campos.

In sum, we cannot conclude that Campos suffered "egregious harm." *Almanza*, 686 S.W.2d at 171. Given that Campos's attorney never asserted the defensive theory of self defense, we cannot conclude that Campos "has not had a fair and impartial trial" due to the trial court's failure to include an instruction on self defense in the application paragraphs of the jury charge. *Id.* Accordingly, we overrule Campos's first issue.

## IV. BURDEN OF PROOF

In her second issue, Campos contends that the trial court "misapplied the law and inverted the burden of proof" on defense of a third person in the application paragraphs of the jury charge. Campos argues in relevant part as follows:

> It should first be noted that the instruction is grammatically at odds with the law. The use of the phrase "or you have a reasonable doubt thereof" at lines 14–15 of page 8 of 24 stands the law on its head. It tells the jury that if they have a reasonable doubt that another person was under attack or attempted attack by Matthew Garcia and she reasonably believed such an attack was occurring and stabbed Garcia then they should acquit her. Alternatively, it could be read to say that if they have a reasonable doubt that she reasonably believed such an attack was occurring and she stabbed

---

2010). "In *Martinez v. State*, for instance, . . . [the Texas Court of Criminal Appeals] held that the appellant was entitled to an instruction on self-defense even though he claimed that he did not intend to kill the victim." *Id.* (citing *Martinez v. State*, 775 S.W.2d 645, 647 (Tex. Crim. App. 1989)).

16

Garcia then they should acquit. In either case it is an improper and extremely confusing allocation of the burden.

We quoted the relevant language from Count I, the alleged murder of Matthew Garcia, in connection with Campos's first issue. The same language is found in the application paragraphs for Counts II–V; however, Campos's attorney has clearly limited the issue to the language in Count I. For ease of reference, we will quote the relevant language again:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of August, 2010, in Kleberg county, Texas, the defendant, Sophia Campos, did with the intent to cause serious bodily injury to Matthew Garcia, commit an act clearly dangerous to human life that caused the death of Matthew Garcia, by stabbing Matthew Garcia, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or a sharp object during the commission of said act, or intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to wit: stabbing Matthew Garcia, that caused the death of Matthew Garcia, and the defendant was then and there in the course of intentionally or knowingly committing a felony, to wit: aggravated assault, and said death of Matthew Garcia was caused in the course of and in furtherance of the commission of or attempt to commit said felony, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife or a sharp object during the commission of said act, but you further find from the evidence, ***or you have a reasonable doubt thereof***, that at that time another person was under attack or attempted attack from the said Matthew Garcia, and that the defendant reasonably believed, as viewed from her standpoint, that such force as she used, if any, was immediately necessary to protect another against such attack or attempted attack, and so believing, she stabbed Matthew Garcia, then you will acquit the defendant and say by your verdict, "not guilty" as to Count I.

(emphasis added).

The Texas Penal Code provides in relevant part, "If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." TEX. PENAL CODE ANN. § 2.03(d) (West 2011). As set forth above, the jury charge instructed the jury to acquit Campos if they

17

had a reasonable doubt about whether she was acting in defense of a third person. This is consistent with the law set forth above. *See id.* Therefore, we reject Campos's assertion that the trial court "misapplied the law."

Furthermore, Campos has not explained how the instruction purportedly "inverted the burden of proof." The two interpretations of the relevant language advanced by counsel are consistent with the State having "the ultimate burden of persuasion when confronted with a section 2.03 defense." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)). "The State's burden is proving its case beyond a reasonable doubt." *Id.* The instruction reflects as much. Accordingly, we conclude that Campos has not demonstrated any error in the jury charge with respect to the reasonable doubt language used in connection with the instruction on the defense of a third party. Therefore, Campos's second issue is overruled.

## V. CONCLUSION

We affirm the trial court's judgment.


NORA L. LONGORIA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
6th day of March, 2014.